UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ESPEJO,<br><br>          Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br><br>          Defendant. | Case No. CV 08-0020 PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying his application for Disability Insurance Benefits ("DIB"). Plaintiff claims that the ALJ erred in 1) failing to give legally sufficient reasons for rejecting his testimony; 2) concluding that his back condition did not meet the requirements of Listing 1.04A; and 3) relying on the testimony of the vocational expert to conclude that Plaintiff could work (issues three and four). (Joint Stip. at 3-6, 11-14, 17-19, 23-24.) Because the Agency's decision that Plaintiff was not disabled is not supported by substantial evidence, the decision is reversed and the case is remanded.

## II. BACKGROUND

On January 24, 2003, Plaintiff applied for DIB. (Administrative Record ("AR") 75-78.) He claimed that he was disabled due to back and leg pain, vision problems, fatigue, insomnia, and depression. (AR 87.) The Agency denied the application initially and on reconsideration. (AR 51-54, 59-62.) Plaintiff then requested and was granted a hearing before an Administrative Law Judge ("ALJ"). (AR 32-35, 69.) On December 2, 2004, Plaintiff appeared with counsel at the hearing and testified. (AR 334-51.) On January 28, 2005, the ALJ issued a decision denying the application. (AR 17-29.) The ALJ determined that Plaintiff was capable of performing the job of "sticker," i.e., someone who sticks pre-glued paper to artificial flowers. The Appeals Council denied Plaintiff's request for review. Thereafter, he commenced this action.

## III. ANALYSIS

A. <u>The Credibility Determination</u>

In his first claim of error, Plaintiff contends that the ALJ did not provide clear and convincing reasons for rejecting his testimony. (Joint Stip. at 3-6.) Plaintiff testified that he could sit for no more than ten minutes, stand for no more than 20 minutes, lift nothing heavier than a gallon of milk, and, further, that he spent two to three hours a day lying down in his bed. (AR 341-42, 344.) The ALJ noted this testimony and found that Plaintiff was partially credible, but concluded that the evidence did not fully support these allegations. (AR 25.) For the following reasons, the Court finds that there was no error here.

ALJ's are tasked with judging the credibility of witnesses. In making a credibility determination, an ALJ may take into account

2

ordinary credibility evaluation techniques. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Where, as here, a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, the ALJ can only reject the claimant's testimony for specific, clear, and convincing reasons. *Id*. at 1283-84. If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ relied, in part, on Plaintiff's testimony that he could work--eight hours a day five days a week (AR 346)--in concluding that Plaintiff's other testimony--that he could not work--was not credible. (AR 25-26.) This is a specific, clear, and convincing reason for rejecting Plaintiff's testimony. *See*, *e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (claimant's testimony that his diabetes was not a "disabling problem" undermined his prior claim that it was and served as substantial evidence to support ALJ's credibility determination). Further, it is supported by substantial evidence in the record. This alone is enough to support the ALJ's credibility finding.

Plaintiff argues that his testimony that he could work was misinterpreted. (Joint Stip. at 6.) He seems to imply that he was merely acquiescing to the ALJ's question and not really endorsing the proposition that he could work. He argues that his testimony should not be controlling because he does not speak and understand English well. As explained below, though the Court recognizes that Plaintiff

had difficulty testifying because of his limited command of the English language, the Court finds that Plaintiff's difficulty with English is not enough to discount his testimony.

At the administrative hearing, Plaintiff attempted to testify through an interpreter but was told by the ALJ that, because he had taken and passed the U.S. citizenship examination in English, he could not use an interpreter unless it was necessary. (AR 337.) It appears that the examination was conducted entirely in English after that point. Throughout his testimony, Plaintiff expressed difficulty understanding the questions and explaining his answers. (AR 338, 340-42, 343-44.) Plaintiff's testimony runs only eight pages in the transcript, yet he testified five times that he did not understand the question and three times that he was unable to explain his answer, presumably because of his difficulty with English. (AR 338, 340-42, 343-44.) Thus, the Court has some general concerns about the way the hearing was conducted and specific concerns about the weight that should be given to Plaintiff's testimony in light of his difficulty understanding English. Nevertheless, after carefully reviewing the transcript, the Court is persuaded that Plaintiff understood the ALJ's question when asked if he would be able to work and, again, when the ALJ asked him to confirm his answer. (AR 346.) As such, Plaintiff's argument that his testimony should be minimized or ignored because of his difficulty with English is rejected.[1]

---

[1] The only explanation the Court can imagine for the ALJ's refusal to allow Plaintiff to testify through an interpreter was that the ALJ wanted to save time. Though this is a laudable goal for an Agency that moves an impressive number of cases through the system each year, due process considerations should take precedence over speed. An applicant's ability to pass a citizenship examination in

The ALJ also rejected Plaintiff's testimony because the medical evidence did not fully support his allegations. (AR 25.) Plaintiff claims that this was improper, too, citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). *Lester* is not on point. Though *Lester* does stand for the proposition that an ALJ cannot discredit a claimant's testimony based on a generalized finding that the evidence does not support the testimony, the ALJ can dismiss a claimant's testimony where he explains how the testimony was undermined by the medical evidence. *See Thomas,* 278 F.3d at 958-59. This is what the ALJ did here. For example, he contrasted Plaintiff's testimony that he was disabled due to lumbar disc disease and radiculopathy to the left leg with the treating doctor's (Dr. Shamlou's) records that showed that, following surgery, Plaintiff reported that his condition was much improved and his leg pain was essentially gone. (AR 25.) Thus, the ALJ's second reason for rejecting Plaintiff's testimony--that it was not supported by the medical record--was also a valid reason for rejecting the testimony and is supported by substantial evidence in the record. *See, e.g., Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical

---

English is no guarantee that he can speak English well enough to testify in English in a legal proceeding. Were this Court to be convinced in the future that a claimant like Plaintiff was unable to understand the questions asked of him and explain his answers, it would not hesitate to send the case back to the Agency for a new administrative hearing with an interpreter. This would ultimately require the Agency to spend more, not less, time on a given case. If, on remand, Plaintiff testifies at a new hearing, he should be allowed to use an interpreter unless the ALJ establishes on the record that he really does not need one. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (("We may accept the propositions advanced by the claimant, some of them long established, that procedural due process is applicable to the adjudicative administrative proceeding" in social security cases.) (internal quotation marks and citations omitted)).

1  record is a sufficient basis for rejecting the claimant's subjective
2  testimony.")
3      Plaintiff contends that the ALJ overlooked his testimony that he
4  "needed" to lie down in bed two to three hours a day. (Joint Stip. at
5  3.)  This is partially true.  The ALJ did not set forth the amount of
6  time Plaintiff said he lies down each day. (AR 25.)  But he did note
7  that Plaintiff rested in bed daily. (AR 25.)  Plaintiff argues that
8  his "need" to lie down each day prevents him from holding down a job.
9  Again, the Court disagrees.  When asked by the ALJ how much time he
10 spent in bed each day, Plaintiff testified that he spent two to three
11 hours a day in bed. (AR 344.)  He never testified that he needed to
12 spend that much time in bed, only that he did. (AR 344.)  Nor is
13 there any evidence in the medical record that would support such a
14 claim.  None of Plaintiff's doctors ordered him to lie down in bed
15 every day. (AR 252.)  As such, Plaintiff's claim is without merit and
16 the ALJ's credibility finding is affirmed.
17   2.   <u>Listing 1.04A</u>
18      In his second claim of error, Plaintiff contends that the ALJ
19 erred when he failed to specifically address whether Plaintiff met the
20 requirements of Listing 1.04A. (Joint Stip. at 11-14.)  Here, the
21 Court sides with Plaintiff and remands the case for further
22 consideration of the issue.
23      Listing 1.04A deals with disorders of the spine, "e.g. herniated
24 nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarth-
25 ritis, degenerative disc disease, facet arthritis, vertebral fracture,
26 resulting in compromise of a nerve root (including the cauda equina)

or the spinal cord." To meet the Listing, a claimant must establish that he suffered from one of these conditions for a 12-month period and also that there was:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. § 404, Subpt P, Appx 1, Listing 1.04A.

The ALJ found that Plaintiff's degenerative disc disease was a severe impairment. (AR 21.) In analyzing the condition, he noted, among other things:

1. Tenderness and decreased range of motion were found on February 25, 2002, and tenderness was again noted in April 2003, together with a positive straight-leg raise test on the left, decreased sensation over the lateral side of the plantar aspect of the left foot, and some decreased strength
2. In May 2003, a consultative examination found some tenderness, limited range of motion, and positive straight-leg raise test on the left, but no sensory deficits
3. In June 2003, Dr. Hunt found tenderness but a straight-leg raise test was negative

(AR 23-24.)

These medical findings, and others not mentioned by the ALJ, such as Dr. Hunt's findings of reduced range of motion in May 2002 and February 2003, (AR 249, 261), tend to support Plaintiff's claim that

he met Listing 1.04A. Some or all of the required listing elements--neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and positive straight-leg raising tests--were noted at various times between February 2002 and June 2003. On the other hand, other evidence suggests that Plaintiff did not meet the Listing. The ALJ's failure to address this issue constitutes error. This is particularly true where, as here, Plaintiff's counsel argued at the hearing that Plaintiff met the requirements for Listing 1.04A. (AR 349-50.) For these reasons, the case is remanded for the ALJ to set forth whether Plaintiff meets Listing 1.04A and, if not, why not.[2]

### 3. The Vocational Expert

In his third claim of error, Plaintiff contends that the ALJ erred in relying on the vocational expert's testimony to conclude that Plaintiff could perform work as a "sticker" since the vocational expert was not given details of the requirements of Plaintiff's sit/stand option and she did not testify about the number of available "sticker" jobs in the region. (Joint Stip. at 17-19, 23-24.) The

---

[2] Listing 1.04A is contained in a broader category of Listings defined as Musculoskeletal Impairments (Listing 1.00). Section 1.00(B)(2)(a) provides that a claimant must establish that he has lost the ability to ambulate effectively as a result of his condition in order to meet the Listing. The Agency argues that Plaintiff must prove that he lost his ability to effectively ambulate as a threshold showing for Listing 1.04A. (Joint Stip. at 14.) The Court rejects this argument. Listing 1.04A does not require a claimant to demonstrate inability to ambulate in addition to the other stated requirements. See, e.g., Gorham v. Astrue, 2008 WL 4030650, at *6 (N.D.N.Y. Aug. 25, 2008) (1.04A "makes no mention of loss of function," such as the inability to ambulate effectively); Mazza v. Barnhart, 2006 WL 4045936, at *6 (D. Kan. Oct. 25, 2006) (Listing 1.04A requirements do not include an inability to ambulate).

Court finds no error here with regard to the sit/stand option but does with regard to the availability of jobs in the region.

The ALJ asked the vocational expert to assume a hypothetical individual who could "perform a full range of sedentary work, except he requires an at-will sit/stand option," and would have various other non-exertional limitations that are not in issue here. (AR 346-47.) Thus, the hypothetical question and the answer presumed that Plaintiff could sit and stand whenever he wanted. Therefore, there was no error in not specifying to the vocational expert the amount of time Plaintiff needed to sit or stand.

Furthermore, even if the ALJ erred by failing to specify that Plaintiff could sit for no longer than ten minutes and stand for no longer than 20, the vocational expert was present during Plaintiff's testimony and, presumably, took that testimony into account when offering her opinion. *See Thomas*, 278 F.3d at 956 (holding that ALJ's failure to incorporate functional limitations in hypothetical question was not error where vocational expert was present for testimony regarding those limitations).

Next, Plaintiff argues that the ALJ erred when he relied on the vocational expert's testimony that Plaintiff could perform work as a "sticker" because that testimony was based on jobs in the national economy and not the regional economy. In Plaintiff's view, in order for the ALJ to conclude that there was a sufficient number of jobs for him to find work, there must have been evidence that there were enough jobs in the region where Plaintiff lived and worked or in several regions throughout the country. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(a) ("We consider that work exists in the national economy when it exists in significant numbers either in the region

where you live or in several other regions of the country."). Though the statutory and regulatory language seems clear, the courts have not necessarily interpreted this provision uniformly. In *Mayes v. Massanari*, 276 F.3d 453, 461 (9th Cir. 2001), the Ninth Circuit affirmed the Agency's finding that a claimant could work based on available jobs in the national economy, though the court did not address the merits of the regional vs. national issue. But, in *Barrett v. Barnhart*, 368 F.3d 691, 691-92 (7th Cir. 2004), the Seventh Circuit rejected the Agency's request to amend its earlier decision in that case where it had required the Agency to establish that there was a sufficient number of jobs in reasonable proximity to the claimant, i.e., locally. While emphasizing that it was not changing the statutory standard, it made clear that the Agency's focus should be on the region where the claimant resided, not on the nation as a whole. *Id.*

The better practice would be to establish that there is a sufficient number of jobs in claimant's region or in more than one region in the country. This would comport with the language of the statute and the regulations. This seems particularly important in a case like the one at bar where the ALJ has concluded that there is only one job that Plaintiff is capable of doing. Further, in this case, the vocational expert apparently had these numbers at her fingertips, but was told by the ALJ not to testify about them. On remand, the ALJ should ask the vocational expert to supply this information.

In a related claim, in claim four, Plaintiff argues that the ALJ erred when he relied on the vocational expert's testimony to conclude that Plaintiff could work as an order clerk and table worker, in

1  addition to working as a "sticker."  (Joint Stip. at 23.)  This issue
2  is entirely irrelevant to the outcome of this case.  The only job
3  identified by the vocational expert that is relevant to the outcome is
4  the job of "sticker."  The evidence established that Plaintiff could
5  perform this job.  Therefore, Plaintiff's objections relating to the
6  ALJ's findings regarding these other jobs are overruled.
7       For the reasons set forth above, the Agency's decision is
8  reversed and the case is remanded for further proceedings consistent
9  with this Opinion.
10      IT IS SO ORDERED.
11      DATED:    May  11 , 2009.

                                    /s/ Patrick J. Walsh
                                    _____
                                    PATRICK J. WALSH
                                    UNITED STATES MAGISTRATE JUDGE

28  S:\PJW\Cases-Soc Sec\ESPEJO, J 20\Memo_Opinion.wpd